UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CIVIL DIVISION

| | |
|---|---|
| T&T MANAGEMENT, INC., a Florida corporation, <br><br> Plaintiff, <br><br> v. <br><br> CHOICE HOTELS INTERNATIONAL, INC., a Delaware corporation, <br> COUNTRY INN & SUITES BY RADISSON, INC., a Delaware corporation, and <br> SUNSHINE FUND PORT ORANGE, LLC, a Florida limited liability company, <br><br> Defendants. | Case No. 6:23-cv-01187 |

**FIRST AMENDED COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF**

(28 U.S.C. § 1331; Federal Question Jurisdiction)

Plaintiff, T&T Management, Inc., a Florida corporation ("T&T"), through its attorneys, states as follows for its Complaint against Defendants, Choice Hotels, Inc., a Delaware corporation ("Choice"), Country Inn & Suites by Radisson, Inc., a Delaware corporation ("Radisson"), and Sunshine Fund Port Orange, LLC, a Florida limited liability company ("Sunshine") (collectively, "Defendants"):

**INTRODUCTION**

1. T&T filed this lawsuit because Defendants Choice and Radisson have materially breached the July 21, 2011 License Agreement ("Agreement") under which

T&T operates a Country Inn & Suites Hotel (the "Hotel") in Port Orange, Florida. These breaches of the Agreement include Defendants' violation of the implied covenant of good faith and fair dealing.

2. All the Defendants are liable for violations of the Defend Trade Secrets Act, 18 U.S.C. §1831, *et. seq.* (the "DTSA"). T&T's customer list (including the names of customers who have stayed at the Hotel over the last 12 years and their contact information) for its hotel is a trade secret. Defendants are liable under the DTSA for misusing T&T's trade secrets.

3. T&T also asserts a claim against Sunshine for tortious interference with a contract or business expectancy under Florida common law. Sunshine's construction and operation of a Choice-brand hotel on the adjacent lot will interfere with T&T's Agreement with its franchisor, as well as T&T's relationship with its customers.

4. T&T originally entered into the Agreement with Country Inn & Suites by Carlson, Inc. to operate a hotel within the Country Inn & Suites system. Radisson and Choice are successor franchisors. Radisson sold its hotel brands to Choice in 2022.

5. The Agreement protects T&T's investment in its Hotel by prohibiting another hotel in the same franchise system from being operated within the "Protected Area" defined by the Agreement. T&T's Protected Area is generally described as an area four miles on either side of I-95 between Exits 256 and 261. This area is about 20 square miles in size.

6. When Radisson and Choice entered into their contract for the sale of the Country Inn & Suites brand, they were aware that Choice has already granted a license to

2

Sunshine for the construction of another hotel in its franchise system, a WoodSpring Suites hotel, within T&T's Protected Area. The WoodSpring Suites hotel is currently under construction on the lot adjacent to T&T's hotel. The operation of another hotel within the same franchise system on the adjacent lot is a material breach of the Agreement, and will cause substantial damage to T&T's business and goodwill.

7.    These actions by Choice and Radisson have materially breached the express written provisions of the Agreement, as well as the implied covenant of good faith and fair dealing, which is part of the contract based on Florida's common law (Count II).

8.    Choice and Raddison have done nothing to remedy these serious breaches of the Agreement or compensate T&T for its damages, thus making this lawsuit necessary. Choice has refused to release T&T from the Agreement despite the franchisor's material breaches of the Agreement.

9.    T&T is not receiving the benefits it bargained for in the Agreement, for which it has been paying substantial royalties and other fees to the franchisor. T&T will incur substantial expenses, in excess of $1 Million, to disengage from the Choice system, remove from the hotel all designations that it was a Country Inn & Suites hotel, and then transform the Hotel into an independent hotel or as the franchisee of another hotel system. Each franchisor has its own requirements for the signage, look and furnishings of its brand.

10.   In addition, Radisson has disclosed, or will disclose, T&T's proprietary guest information with Choice without T&T's consent and without any compensation to T&T. Over the approximately 12 years that T&T has been operating its Hotel, it has worked hard

to operate an excellent hotel and build long-term relationships with its customers. It has built its proprietary customer list over that 12-year period.

11. T&T has also engaged in substantial marketing efforts for its Hotel using its proprietary customer list, including targeted email marketing to guests who have stayed at the Hotel or requested information. Radisson and Choice have damaged, and will continue to damage, T&T's business by marketing to T&T's customers regarding other Choice-system hotels in the area. Choice has announced that T&T's hotel will be added to Choice's on-line reservation system on August 15, 2023.

## PARTIES

12. T&T is a Florida corporation, with its principal place of business in Stuart, Martin County, FL. T&T owns and operates a hotel in Port Orange, Volusia County, Florida.

13. Choice is a Delaware corporation, with its principal place of business in Rockville, Maryland.

14. Radisson is a Delaware corporation, with its principal place of business in Brooklyn Center, Minnesota.

15. Sunshine is a Florida limited liability company, with its principal place of business in Orlando, Florida.

16. This Court has jurisdiction of this case under 28 U.S.C. §1331 because it involves a federal question, specifically T&T's claim under the DTSA.

## JURISDICTION AND VENUE

17. Venue is proper in this Court because it involves a hotel located in the City of Port Orange, Volusia County, Florida.

18. This Court has personal jurisdiction over the Defendants for the following reasons:

    a. Sunshine is a Florida limited liability company, with its principal place of business in Orlando, Florida.

    b. Choice is a party to the Agreement, which requires performance in the State of Florida.

    c. Raddison is a party to the Agreement, which requires performance in the State of Florida.

## FACTUAL ALLEGATIONS

### T&T's Hotel

19. T&T owns and operates a Country Inn & Suites Hotel located at 5802 Journey's End Way, Port Orange, FL. It is located very closed to an exit on I-95, the major interstate highway along the east coast of the United States, running from Maine to Florida.

20. In April 2011, T&T purchased a partially-constructed hotel from First Southern Bank, as well as a developable vacant lot and additional land to be used as common areas in the commercial subdivision, including roadway, park and retention pond.

21. T&T completed construction of the Hotel and the infrastructure for the subdivision. The Hotel has continuously been doing business in Port Orange, FL since December 2011.

### License Agreement With T&T

22.  T&T signed the Agreement with Country Inn & Suites by Carlson, Inc. ("Carlson") as the franchisor in July 2011. (A copy of the Agreement is attached as Exhibit "1")

23.  The Agreement has a term of 15 years, and is scheduled to expire on July 20, 2026.

24.  The Agreement provided important protections for T&T's investment in its Hotel, including restrictions against another hotel within the same system within a defined geographic area, defined by the Agreement as the "Protected Area," for the entire term of the Agreement (the "Protected Term").

25.  T&T chose to affiliate its hotel with Carlson, and to sign the Agreement, in reliance on the protections contained in the Agreement.

### Successor Franchisors

26.  In 2016, Carlson's franchised hotel system was acquired by Radisson Hotel Group Americas ("Radisson"). Two years later, "Country Inn and Suites by Carlson" was rebranded "Country Inn and Suites by Radisson."

27.  Radisson was later acquired by a company owned by the Chinese government.

28.  In June 2022, Choice acquired Radisson's franchise hotel system in the United States and became the successor franchisor under the Agreement.

29.  Under Section 20.1 of the Agreement, Choice is "required to assume all of [licensor's] obligations under this Agreement." The Agreement is now in effect between

6

T&T and Choice, because Choice is the current successor to Carlson, Inc., the original licensor/franchisor.

30. T&T was not consulted about, and did not consent to, the sale of the Country Inn & Suites brand from Radisson to Choice.

31. The sale from Radisson to Choice does not release Radisson from liability for its own breaches of the Agreement.

### T&T's Award-Winning Hotel

32. T&T's hotel is located near the Daytona International Speedway and many outdoor recreational activities and other tourist attractions.

33. T&T has successfully operated the Hotel, and has received numerous awards and recognitions, including the following awards from the franchisors (Carlson, Radisson or Choice):

- #1 in guest satisfaction – 2012 through 2016;

- #1 in Net Promoter Score – 2017
- #2 in Net Promotor Score – 2018;

- President's Award – 2012-2017, 2019;

- Hospitality Excellence Award – 2012-2023;

- Be Our Guest Service Award – 2012, 2017;

- Hotel of the Year – 2013; and

- General Manager Tom Clapsaddle was nominated for General Manager of the Year 3 times.

34. The Hotel has also received numerous awards from third parties, including the following:

- Trip Advisor – Travelers Choice Award – 2014-2018;

- Hotels.com – Loved by Guests Award – 2021;

- Booking.com – Award of Excellence – 2014;

- Southeast Volusia Advertising Authority – New Smyrna Beach Visitors Center Sustainability Award – 2021; and

- Port Orange South Daytona Chamber of Commerce – Business Person of the Year Award – 2019 – General Manager Tom Clapsaddle

### T&T's Customer List is a Trade Secret

35. Over the approximately 12 years that T&T has been operating its Hotel, it has worked hard to operate an excellent hotel and build long-term relationships with its customers.

36. Some of the guest reservations at the Hotel come through the franchisor's reservation system, but many reservations are a result of satisfied repeat customers, word-of-mouth referrals, on-line ratings from Trip Advisor, Hotels.com and other sites, advertising by the Hotel, etc.

37. T&T also engages in its own marketing and advertising to promote the Hotel, including targeted emails to persons on its proprietary customer list.

38. The Hotel's guest/customer list is a very valuable business asset.

39. T&T's customer list includes the names of customers who have stayed at the Hotel over the last 12 years and their contact information, and others who have requested information about the hotel.

40. These trade secrets have given T&T an opportunity to obtain an advantage over competitors who did not know or use them.

41. These trade secrets are not known to T&T's competitors or others outside Plaintiff's own business.

42. These trade secrets are known only by T&T's employees who have a need to know the information.

43. T&T takes measures to guard against the theft of its trade secrets.

### Misuse of T&T's Customer List

44. Radisson has disclosed, or will soon disclose, T&T's proprietary guest information with Choice without T&T's consent and without any compensation to T&T.

45. A current search on www.choicehotels.com for hotels in Port Orange, FL shows four Choice-brand hotels located within seven (7) miles of the Hotel, and another six (6) Choice-brand hotels located within twenty one (21) miles of the Hotel.

46. The same current search on www.radissonhotelsamericas.com only provides information about the Hotel.

47. The sale of the Country Inn & Suites brand from Radisson to Choice will damage T&T's business goodwill by diverting business to other hotels within the Choice system.

48. Beginning on August 15, 2023, the hotel will be listed on the Choice on-line reservation system, rather than a separate Country Inn & Suites reservation system, as has been the case since the Hotel opened for business until now.

## Breach of Agreement by Allowing
## Another Choice System Hotel on the Adjacent Lot

49. Choice has granted a license to Sunshine for a WoodSpring Suites hotel on a lot adjacent to the Hotel. The WoodSpring Suites hotel is now under construction. It is expected to open in approximately December of 2023.

50. When Radisson and Choice entered into their Agreement, they were aware that Choice had already granted a license for the construction of another hotel in its franchise system, a WoodSpring Suites hotel, within the "Protected Area" defined by the Agreement.

51. The consolidation of the Country Inn & Suites brand into the Choice system has resulted in a violation of T&T's Protected Area.

52. The presence of the WoodSpring Suites hotel on the adjacent lot violates T&T's protected territory under the Agreement, because both the existing Country Inn & Suites and the new WoodSpring Suites are Choice System hotels.

53. Section 1.2(a) of the Agreement establishes the following exclusive territory for T&T, and does not allow any another hotel using the "Marks" to operate with the Protected Area, and certainly not on the adjacent lot:

> For the Term of the Agreement ("Protected Term") as long as Licensee (i) Opens the Hotel by the dates required in this Agreement; and (ii) continuously Operates the Hotel In compliance with this Agreement, Country will not Operate, or license other Persons to Operate, hotels **using the Marks** within the area described as: four (4) miles on either side of the center line of Interstate 95 and Exit #256, traveling in a northerly direction up to and including Exit #261 {International Speedway Boulevard). In addition, four (4) miles on either side of the center line of Interstate 95 and

10

> Exit #256 (Highway 44) ("Protected Area"). Protected Area and Protected Term are collectively, "Exclusivity."

(emphasis added).

54. Both the "Country Inn & Suites" and the "WoodSpring" **brands** are "Affiliates." As defined by Section 25.28 of the Agreement, any entity controlled by Choice, or under common control, is an "Affiliate."

55. The Agreement defines "Marks" as follows, and includes all Marks used by all System Hotels:

> <u>Marks</u>. The Primary Marks and all other trademarks, service marks, trade names, copyrights, insignia, emblems, slogans, logos, commercial symbols, signs, trade dress (including interior and exterior building designs and specifications and the motif, decor, and color combinations), and all other visual identification, whether in English or any other language by which the **System** and **System Hotels** and the related services and products *are* identified and publicized, including the good will associated with all of them.

(emphasis added).

56. The Agreement defines "System" as follows, and encompasses all Choice System Hotels:

> <u>System.</u> The Marks, the Confidential and Proprietary System information and other distinctive elements developed and owned by, or made available by its Affiliate to Country, and the methods made available to Country for the Construction and Operation of **System Hotels** and other hotels authorized to use the System, including hotels owned or Operated by Country or its Affiliates, and all good will.

(emphasis added).

57. The Agreement further defines "System Hotel" as follows. This definition includes both Country Inn & Suites and WoodSpring Suites hotels, because both are part of the Choice system:

> <u>System Hotel</u>. Any real property and all improvements (including all buildings, facilities, appurtenances, landscaping, FF&E and parking areas) operated in the United States as a lodging facility **using the System** which rents rooms to transient guests generally on a short term basis. It does not include hotels owned or Operated by Country or its Affiliates.

(emphasis added).

58. Choice advertises on its website and elsewhere that the WoodSpring Suites and Country Inn & Suites brands are now both part of the Choice franchise system.

59. Since WoodSpring uses Marks covered within the terms of the Agreement between T&T and Choice, a WoodSpring Suites hotel may not be located within T&T's Protected Area.

## COUNT I
## BREACH OF CONTRACT BY CHOICE AND RADISSON

60. T&T incorporates by reference the allegations contained in Paragraphs 1-59, as though fully stated herein.

61. Choice and Radisson have materially breached the Agreement by allowing another hotel within its franchise system to be constructed on the adjacent lot.

62. This material breach of the Agreement by Choice and Radisson relieves T&T of the obligation to continue to comply with its obligations under the Agreement.

63. T&T will incur substantial expenses to disentangle itself from Choice, such as removing all designations that it is a member of the Choice franchise system.

64. T&T will also incur substantial expenses to make changes to its facilities to affiliate itself with another franchise system.

65. T&T will also be damaged because Choice has already obtained access to T&T's entire customer list and Guest Data. This will damage T&T because it will allow Choice and its system hotels, including the soon-to-open WoodSpring Suites hotel, to market directly to T&T's guests/ customers.

66. T&T is entitled to recover damages for Radisson's disclosure and Choice's use of T&T's Guest Data to divert business from the Hotel to other hotels in the Choice system.

67. As a result of its breach of its contractual obligations to T&T, Radisson and Choice are liable to T&T for money damages caused by Choice's breach of contract.

WHEREFORE, T&T requests that this Court enter a Judgment against Choice and Radisson in the amount of at least $75,000.00, plus interest, costs and attorneys' fees.

### COUNT II
### VIOLATION OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BY CHOICE AND RADISSON

68. T&T incorporates by reference the allegations contained in Paragraphs 1-67, as though fully stated herein.

69. A covenant of good faith and fair dealing is implied into contracts by Florida law. The implied covenant states that neither party shall do anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

13

70. Choice and Radisson were obligated to act in good faith and deal fairly with T&T.

71. Choice and Radisson violated this covenant by (a) allowing another hotel within the same franchise system to be constructed on the adjacent hotel and (b) transferring T&T's customer information from Radisson to Choice, allowing Choice to market to T&T's customers for other hotels within the Choice system.

72. These actions by Choice and Radisson have caused severe damage to T&T's business.

WHEREFORE, T&T requests that this Court enter a Judgment against Choice and Radisson in the amount of at least $75,000.00, plus interest, costs and attorneys' fees.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT
## OR EXPECTANCY BY SUNSHINE

73. T&T incorporates by reference the allegations contained in Paragraphs 1-72, as though fully stated herein.

74. T&T is in the business of operating a Country Inn & Suites hotel in Port Orange, Florida.

75. Sunshine has knowledge of T&T's business and its license agreement with Radisson (and now Choice).

76. Those business relationships and expectancies had a reasonable likelihood of future economic benefit for T&T.

77. By interfering with those business expectancies for its own gain, Sunshine has tortiously interfered with T&T's business relationships and expectancies.

WHEREFORE, T&T requests that this Court award damages against Defendant Sunshine in whatever amount Plaintiff is found to be entitled in excess of $75,000, plus interest, costs, and attorney fees.

## COUNT V
## VIOLATION OF THE DEFEND TRADE SECRETS ACT

78. T&T incorporates by reference the allegations contained in Paragraphs 1-77, as though fully stated herein.

79. The Defend Trade Secrets Act of 2016, 18 U.S.C. §1831, *et. seq.*, provides a remedy for misuse or misappropriation of a trade secret.

80. T&T customer list is a trade secret.

81. These trade secrets have given T&T an opportunity to obtain an advantage over competitors who did not know or use them.

82. These trade secrets are not known to T&T's competitors or others outside Plaintiff's own business.

83. But for Defendants' improper actions, these trade secrets are known only by T&T's employees who have a need to know the information.

84. T&T takes measures to keep the information secret and guard against the theft of its trade secrets.

85. T&T receives independent economic value from the information not being generally know and not being readily ascertainable through proper means.

86.   Defendants have misappropriated, or will misappropriate, T&T's trade secrets by using them to divert business from T&T to other Choice hotels and have obtained or seeks to obtain economic value from the use of the information.

87.   T&T has suffered damages as a result of Defendants' misappropriation of T&T's trade secrets.

88.   Defendants' ongoing conduct has caused, and if not permanently enjoined, will continue to cause, irreparable harm to T&T; therefore, T&T does not have an adequate remedy at law to fully remedy the harm caused by Defendants to T&T. T&T seeks an injunction upon such terms as the Court may deem reasonable, to prevent further harm to T&T due to the improper use, or imminent use, of T&T's trade secrets.

WHEREFORE, T&T requests that this Court award the following:

   a.   damages against Defendants in whatever amount Plaintiff is found to be entitled in excess of $75,000, plus interest, costs, and attorney fees;

   b.   entry of permanent injunctive relief against Defendants, from possessing and using Plaintiff's trade secrets improperly; and

   c.   any such furth relief as the Court deems appropriate.

Respectfully Submitted,

/s/ Brian L. Wagner
BRIAN L. WAGNER
Florida Bar Number: 0142727
Dinsmore & Shohl, LLP
225 East Robinson Street, Suite 600
Orlando, Florida 32801-2854
Telephone: (407) 377-6167
Facsimile: (407) 423-2016
Primary:   brian.wagner@dinsmore.com
Secondary: sharlene.emerson@dinsmore.com
*Attorneys for Plaintiff*

                           */s/ Mark S. Demorest*
                           MARK S. DEMOREST
                           Florida Bar Number:
                           Demorest Law Firm, PLLC
                           322 W. Lincoln Ave.
                           Royal Oak MI 48067
                           Telephone: (248) 723-5500
                           Facsimile: (248) 723-5588
                           Primary: mark@demolaw.com
                           Secondary: robbin@demolaw.com
                           *Attorneys for Plaintiff*

Dated: September 21, 2023

Thomas, Karl/T&T Management/Choice Hotels (1602)/1 Draft Pleadings/2023 09 18 First Amended Complaint.docx