# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| T&T MANAGEMENT, INC., | |
| Plaintiff, | Civil No. 24-1504 (JRT/DTS) |
| v. | |
| CHOICE HOTELS INTERNATIONAL, INC.; REDISSON HOTELS INTERNATIONAL, INC.; AND SUNSHINE FUND PORT ORANGE, LLC, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

Lance D. Meyer and Lukas Belflower, **O'MEARA WAGNER, P.A.**, 7401 Metro Boulevard, Suite 600, Edina, MN 55439; Mark S. Demorest, **DEMOREST LAW FIRM, PLLC**, 322 West Lincoln, Royal Oak, MI 48067, for Plaintiff.

Craig P. Miller and Kiralyn Locke, **LATHROP GPM LLP**, 80 South Eighth Street, Suite 3100, IDS Center, Minneapolis, MN 55402, for Defendants.

T&T Management, Inc. entered into a license agreement with Country Inn & Suites by Carlson, Inc. ("Country") to open and operate, with geographic exclusivity protections, a Country Inn & Suites Hotel in Port Orange, Florida. Country was acquired twice, first by Radisson Hotel Group Americas ("Radisson") and then by Choice Hotels, Inc. ("Choice"). When Choice granted Sunshine Fund Port Orange, LLC ("Sunshine") a license to open another hotel within Choice's portfolio near T&T's hotel, T&T filed this case. Choice did not breach any license agreement, however, because the terms unambiguously grant T&T protection from only other Country Inn & Suites brands. The terms also allowed for the

use and disclosure of proprietary information, precluding any Defend Trade Secrets Act claims.  Accordingly, the Court will grant Defendants' motion to dismiss and dismiss the action with prejudice.

## BACKGROUND

### I.    FACTS

In April 2011, T&T purchased a partially constructed hotel in Port Orange, Florida. (3rd Am. Compl. ("TAC") ¶ 21, Aug. 9, 2024, Docket No. 113.)  Before completion, T&T entered into a license agreement ("Agreement") with Country to open and franchise a Country Inn & Suites Hotel, which opened later that year.  (*Id.* ¶¶ 22–23.)  The Agreement included a limited geographic area ("Protected Area") where T&T maintained an exclusive license for hotels within the same hotel system for the entire 15-year term of the Agreement.  (*Id.* ¶¶ 24–25.)  The Agreement also required T&T to maintain the Hotel to the standards and requirements imposed by the franchisor.  (*Id.* ¶ 9.)  Since the inception of the Agreement until its recent sale, T&T successfully maintained the Hotel, built long-term relationships with its customers, and won numerous awards.  (*Id.* ¶¶ 10–11, 34–38.)

Since the Agreement's commencement, the franchisor has changed twice.  In 2016, Radisson acquired Country's franchised hotel system.  (*Id.* ¶ 27.)  Then in June 2022, Choice acquired Radisson's franchise hotel system in the United States.  (*Id.* ¶ 29.)  As a result, Choice now functions as the franchisor in the Agreement with T&T.  (*Id.* ¶ 30.)  T&T also recently sold its Hotel, allegedly for a substantial discount because of the actions giving rise to these claims.  (*Id.* ¶ 12.)

Before acquiring Radisson's franchise hotel system, Choice issued a license to Sunshine Fund Port Orange, LLC ("Sunshine") to open and operate a WoodSpring Suites hotel within the Protected Area.  (*Id.* ¶ 50.)  T&T alleges that Radisson and Choice knew of this license when they agreed to the acquisition.  (*Id.* ¶ 51.)  T&T also alleges that Sunshine knew of T&T's Agreement with Radisson and now Choice.  (*Id.* ¶ 153.)  Following Choice's acquisition of Radisson's franchise hotel system, Choice now lists both Country Inn & Suites and WoodSpring Suites as part of the Choice franchise system.  (*Id.* ¶ 59.)

The Agreement allows for a franchisor transfer without the consent of T&T but requires the successor to "assume all of [the] obligations under this Agreement."  (*Id.* ¶ 30, Ex. 1 ("Agreement") ¶ 20.1.)  Choice, as the current franchisor, is obligated to perform under the Agreement.  (TAC ¶ 30.)

The Agreement prohibits Choice from licensing other persons to operate hotels using the "Marks" within a Protected Area.  (Agreement ¶ 1.2(a).)  Nevertheless, the Agreement permits Choice to "use any trademarks, trade dress, trade names, reservations systems, or franchise systems that are acquired by [Choice]" and to license "hotels using other systems and marks."  (*Id.* ¶ 1.2(b)(2).)

The Agreement also describes ownership and control of certain data.  Section 13.3 identifies Choice as the owner of "all Confidential and Proprietary System Information."  (*Id.* ¶ 13.3.)  Choice and T&T both own "the Licensee Data that is stored in the Technology System software at the Hotel, and each of them, and their respective Affiliates have the

right to use Guest Data only in accordance with all Legal Requirements." (*Id.*) Only Choice has the "right to disclose any information concerning the operation results and System Hotel Statistics of the Hotel or such other information in the Technology System, reservations, and other systems without [T&T's] consent." (*Id.*)

T&T alleges that Radisson has or will disclose T&T's proprietary guest information to Choice without T&T's consent and without any compensation to T&T. (TAC ¶ 45.) T&T describes its customer lists as originating not only through reservations from the franchisor's online system but also positive reviews, word of mouth, and repeat customers, making it a valuable trade secret. (*Id.* ¶¶ 36–41.) T&T further claims that while a search of the immediate area around the Hotel on the former Radisson website displayed the Hotel as the only option, the same search on Choice's website now includes both the Hotel and four other Choice-branded hotels. (*Id.* ¶¶ 46–47.) The Hotel reservation system has also been fully integrated into Choice's online reservation system. (*Id.* ¶ 49.) T&T claims that this allegedly illegal sharing of T&T data damaged T&T's business goodwill "by diverting business to other hotels within the Choice system." (*Id.* ¶ 48.)

The Agreement defines many terms but those relevant here are Confidential and Proprietary System Information, Guest Data, Marks, Primary Mark, and System.

> <u>Confidential and Proprietary System Information:</u> Guest Data, System Hotel Statistics and all System Information, whether or not developed by [Choice] from its own Guest Data and System Hotel Statistics, or from Guest data and System Hotel

Statistics furnished to [Choice] by [T&T], regardless of whether they are labeled confidential, proprietary or trade secret.

. . .

Guest Data: Personal information, data and statistics on System Hotel guests.

. . .

Marks: The Primary Marks and all other trademarks, service marks, trade names, copyrights, insignia, emblems, slogans, logos, commercial symbols, signs, trade dress (including interior and exterior building designs and specifications and the motif, decor, and color combinations), and all other visual identifications, whether in English or any other language by which the System and System Hotels and the related services and products are identified and publicized, including the good will associated with all of them.

. . .

Primary Mark: "Country Inn By Carlson," "Country Suites By Carlson" and "Country Inn & Suites By Carlson," but only the one that is used as a part of [T&T's] Name.

. . .

System: The Marks, the Confidential and Proprietary System information and other distinctive elements developed and owned by, or made available by its Affiliated to [Choice], and the methods made available to [Choice] for the Constructions and Operation of System Hotels and other hotels authorized to use the System, including hotels owned or Operated by [Choice] or its Affiliates, and all good will.

(*Id.* ¶ 25.28.)

## II.    PROCEDURAL HISTORY

T&T originally filed this action in the Middle District of Florida against Choice Hotels, Inc.; Radisson Hotels International, Inc.; and Sunshine Fund Port Orange, LLC. (Compl., June 26, 2023, Docket No. 1.) T&T amended its complaint to name Country Inn & Suites by Radisson, Inc. in lieu of Radisson Hotel International, Inc. (1st Am. Compl.,

Sept. 21, 2023, Docket No. 34.)  The Middle District of Florida Court dismissed T&T's first amended complaint sua sponte as a "shotgun" pleading and required it to refile and "clearly delineate which factual allegations are relevant to each claim."  (Order, Oct. 5, 2023, Docket No. 35.)  T&T filed its second amended complaint in response.  (2nd Am. Compl., Oct. 23, 2023, Docket No. 43.)  Defendants filed a motion to dismiss and a motion to transfer the action to Minnesota pursuant to the Agreement's forum selection clause.  (Defs.' Mot. Dismiss, Nov. 6, 2023, Docket No. 48; Defs.' Mot. Transfer, Nov. 6, 2023, Docket No. 49.)  The Middle District of Florida Court granted the motion to transfer, and the action was transferred to the District of Minnesota.  (Order Granting Mot. Transfer, Apr. 24, 2024, Docket No. 78.)  Defendants filed a new motion to dismiss.  (Defs.' 2nd Mot. Dismiss ("MTD"), June 5, 2024, Docket No. 83.)

T&T has since filed a third amended complaint but only to address the fact that it sold the Hotel which changed the damages calculations and removed the request for injunctive relief.  (Mot. Am. Pleadings ¶¶ 3–6, July 23, 2024, Docket No. 102; TAC.)  The parties agree that the changes in the third amended complaint do not change the arguments raised on the motion to dismiss.  (Stip. for Leave to Am., Aug. 5, 2024, Docket No. 111.)  Accordingly, while the parties reference the second amended complaint in the motion to dismiss, the third amended complaint is now the operative complaint in this action.

T&T includes four counts in its operative complaint: Count 1, Breach of Contract by Choice and Radisson; Count 2, Breach of the Implied Covenant of Good Faith and Fair Dealing by Choice and Radisson; Count 3, Tortious Interference with Contract or Expectancy by Sunshine; and Count 4, Violation of the Defend Trade Secrets Act. (TAC ¶¶ 61–181.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty., v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include "more than labels and conclusions, and a

formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).  The Court may also consider matters of public record and exhibits attached to the pleadings, as long as those documents do not conflict with the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.    ANALYSIS

The Agreement indicated that any disputes would be governed by the laws of the State where the Hotel is located.  The Hotel is located in Florida, so Florida law applies to the state law claims.  Federal law applies to the Defend Trade Secrets Act claim.

### A.    Breach of Contract

T&T alleges two breaches of contract: (1) Radisson disclosing Guest Data to Choice and Choice using the Guest Data and (2) Choice granting Sunshine a license to open a WoodSpring Suites hotel within the Protected Area.

T&T's first allegation that Radisson breached the Agreement by disclosing Guest Data to Choice and that Choice breached the Agreement by using the Guest Data is unsupported by the Agreement itself.  The Agreement unambiguously names the franchisor as the owner of all Guest Data and allows the owner to use the Guest Data.  So

as a matter of law, no breach occurred when Radisson shared Guest Data with the successor franchisor Choice and when Choice used the Guest Data it owned.

The second claim requires resolution of the parties' disagreement as to the scope of the terms "Marks" and "System." Choice argues "System" includes only the Country Inn and Suites Marks, while T&T argues that **all** of Choice's 22 brands are now excluded from the Protected Area. T&T's interpretation is unreasonable.

Whether a contract term is ambiguous is a question of law. *Underwriters at Lloyd Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd.*, 882 F.3d 1033, 1039 (11th Cir. 2018). If contract terms are unambiguous, the court applies their plain and ordinary meaning. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996); *see also Prime Homes, Inc. v. Pine Lake, LLC*, 84 So.3d 1147, 1151 (Fla. Dist. Ct. App. 2012). The language of the contract is not to be taken in isolation but rather read to give meaning to the entire contract and honor the intent of the parties. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009); *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008). An ambiguity is not present just because a contract could "possibly be interpreted in more than one manner." *Laws. Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). Only if the terms are ambiguous may the court look to extrinsic evidence. *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019); *see also SCG Harbourwood, LLC v. Hanyan*, 93 So.3d 1197, 1200 (Fla. Dist. Ct. App. 2012).

The Agreement prohibits Choice from licensing any other Marks within the Protected Area. "Marks" includes the Primary Marks and anything else identifying the System. "Primary Marks" are only "Country Inn by Carlson," "Country Suites by Carlson," and "Country Inn and Suites by Carlson." (Agreement ¶ 25.28.) No other specific brands are referenced in these definitions. Further, the Agreement expressly allows Choice to grant licenses in the Protected Area for hotels using "other systems and marks," and the Agreement allows for the use of "trademarks, trade dress, trade names, reservation systems, or franchise systems" acquired by Choice. (*Id.* ¶ 1.2(b)(2).)

Reading the exclusivity provisions holistically, the Court finds that parties anticipated both the acquisition of different franchise systems and subsequent licenses to hotels bearing "other systems and marks." In other words, the Agreement requires "System" and "Marks" to be read narrowly to protect T&T only from other licenses to use the Country Inn & Suites brands. Sunshine's license for the WoodSpring Suites hotel is outside the scope of the exclusivity provisions, so Radisson and Choice did not breach the Agreement.

Because neither Radisson nor Choice breached the Agreement, the Court will grant Defendants' motion to dismiss as to the breach of contract claim.

### B.     Breach of the Implied Covenant of Good Faith and Fair Dealing

T&T next alleges that Radisson and Choice breached the implied covenant of good faith and fair dealing through the same conduct T&T alleged was an express breach.

Under Florida law, every contract includes an implied covenant of good faith and fair dealing, which attempts to protect the parties' reasonable expectations. *Cox v. CSX Int'l, Inc.*, 732 So.2d 1092, 1097 (Fla. Dist. Ct. App. 1999). But Florida law does not recognize a breach of the implied covenant as an independent action, so such an action cannot be maintained absent an express breach. *Centurion Air Cargo, Inc. v. U.S. Postal Servs.*, 420 F.3d 1146, 1151–52 (11th Cir. 2005).

Because the Court has found that as a matter of law no breach of contract occurred, the claim for breach of the implied covenant of good faith and fair dealing must also be dismissed.

### C.    Tortious Interference

T&T also claims that Sunshine tortiously interfered both with T&T's Agreement with Choice and with T&T's relationship with its customers.

Under Florida law, the claims of tortious interference with contract, business relationship, and business expectancy share the same basic elements. *McKesson Corp., v. Benzer Pharmacy Holding, LLC*, No. 8:20-2186, 2020 WL 7054683, at *8 (M.D. Fla. Dec. 2, 2020); *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1537–38 (S.D. Fla. 1995). Tortious interference with a business relationship requires '(1) the existence of a business relationship. . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc.*

-11-

*v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985)).  "The mere hope that some of its past

customers may choose to buy again cannot be the basis for a tortious interference claim."

*Id.* at 815.  To prove tortious interference with a contract, plaintiff also must demonstrate

there was a breach of contract.  *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832

So.2d 810, 814 (Fla. Dist. Ct. App. 2002).

     Because the Court found that no breach of contract occurred, Sunshine could not

have tortiously interfered with T&T's contract with Radisson or Choice.  *Id.*  Accordingly,

any claim of tortious interference with T&T's contractual relationships must be dismissed.

     T&T's claim that Sunshine tortiously interfered with T&T's business expectancies

also fails because T&T's relationship with its customers was speculative.  It is insufficient

to allege interference with the public at large.  *Ethan Allen*, 647 So.2d at 815.  Instead, the

relationship must be supported with evidence that the parties are likely to engage in

business.  *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla.

2017) (citing *Ethan Allen*, 647 So.2d at 815).  While T&T does allege it had a specific,

proprietary customer list, T&T did not present how, absent Sunshine's alleged

interference, the customers would have provided repeat business to T&T.  Because T&T's

relationship is speculative, the Court will dismiss T&T's tortious interference claim.

    **D.**    **Defend Trade Secrets Act**

     Finally, T&T claims that all Defendants misappropriated its trade secret, customer

lists, by using that information to divert business to competing hotels.

Under the Defend Trade Secrets Act ("DTSA"), "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  Trade secrets include business information, so long as "the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  *Id.* § 1839(3)(A)–(B).   To allege misappropriation of a trade secret, T&T must show, "among other things, the existence of a protectable trade secret and misappropriation of that trade secret."  *Ahren Rentals, Inc. v. Equipmentshare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023) (quotations omitted).   Misappropriation means, "disclosure or use of a trade secret of another without express or implied consent by a person who at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was" either acquired under a duty to maintain the secrecy of the trade secret or obtained from someone who owed a duty to maintain the secrecy of the trade secret.  18 U.S.C. § 1839(5)(B)(ii)(II)–(III).

T&T sufficiently alleged that the customer lists constitute trade secrets and that it derived independent economic value from that secrecy.  T&T kept the information confidential and only provided it to employees that needed to know that information.

*Metal Lubricants Co. v. Engineered Lubricants Co.*, 411 F.2d 426, 428 (8th Cir. 1969) (comparing customer lists that are secretly maintained to those publicly available). T&T supported its claim of independent economic value by citing to its investments in establishing the Hotel and many repeat customers. The Court will find that T&T's customer lists are trade secrets.

However, T&T's DTSA claim fails because the operative complaint does not allege any misappropriation by Choice or Radisson. Choice gained access to the trade secrets properly, under the Agreement, without any requirement or notice that the information was to be kept confidential. Under the Agreement, T&T and Choice are both owners of the customer lists at issue, T&T was required to furnish that information to Choice, and each may use the information. Thus, Choice had express consent under the Agreement to use the data.

Choice also did not disclose the data under a duty to maintain its secrecy. The Agreement required T&T to implement specific safeguards to maintain the confidentiality of the information, but it did not require the same of Choice. Choice had no obligation to keep any information confidential under the Agreement. So, any disclosure by Choice does not constitute misappropriation.

The operative complaint also did not sufficiently allege that Sunshine misappropriated T&T's trade secrets. Indeed, it includes nothing specific about Sunshine's conduct. But even if Sunshine received the customer lists, there is no

-14-

allegation that it used the information or that Sunshine knew it was receiving the trade secret from a party required to keep it confidential.

Because none of the Defendants misappropriated the trade secrets, the Court will dismiss the claim.

## CONCLUSION

T&T brings four claims against Radisson, Choice, and Sunshine, seeking to redress alleged harms from Sunshine's license to open and operate a WoodSpring Suites hotel within the Protected Area. However, the Agreement only protected T&T from the franchisor issuing licenses to open and operate hotels under the Country Inn & Suites brands, not the entire portfolio of any potential successor franchisor. Sunshine's conduct did not interfere with any of T&T's business relationships because, while T&T describes specific customer relationships, T&T failed to show the certainty of those business relationships in the absence of interference. Finally, Defendants did not misappropriate any trade secrets. The Court does not find that leave to amend is warranted in this case as the complaint has been amended three times. Thus, the Court will grant Defendants' motion to dismiss and dismiss the action with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 83] is **GRANTED** and Plaintiff's Third Amended Complaint [Docket No. 113] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  February 27, 2025
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                           United States District Judge