UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

T&T MANAGEMENT, INC.,

                                  Plaintiff,

v.

CHOICE HOTELS INTERNATIONAL, INC.;
COUNTRY INN & SUITES BY RADISSON,
INC.; and SUNSHINE FUND PORT
ORANGE, LLC,

                                  Defendants.

Civil No. 24-1504 (JRT/DTS)

**MEMORANDUM OPINION AND ORDER
ON ATTORNEY'S FEES AND COSTS**

Lance D. Meyer and Lukas Belflower, **O'MEARA WAGNER, P.A.**, 7401 Metro Boulevard, Suite 600, Edina, MN 55439; Mark S. Demorest, **DEMOREST LAW FIRM, PLLC**, 322 West Lincoln, Royal Oak, MI 48067, for Plaintiff.

Craig P. Miller and Kiralyn Locke, **LATHROP GPM LLP**, 80 South Eighth Street, Suite 3100, IDS Center, Minneapolis, MN 55402, for Defendants.

After the Court granted the Defendants motion to dismiss and dismissed this entire action with prejudice, Defendants Radisson Hotel Group Americas ("Radisson") and Choice Hotels International, Inc. ("Choice") (collectively "Franchisor Defendants") filed a motion for attorney's fees and costs. The Court finds that the Franchisor Defendants' cost request is reasonable but that the fee request requires a fifteen percent reduction. Accordingly, the Court will award $177,151.65 in attorney's fees and $4,362.23 in costs.

**BACKGROUND**

The factual background of this dispute was described in detail in the Court's Order dismissing the case. *T&T Mgmt., Inc. v. Choice Hotels Int'l, Inc.*, No. 24-1504, 2025 WL 643033, at *1–2 (D. Minn. Feb. 27, 2025). So, the Court includes only the background necessary for the motion for attorney's fees and costs.

Plaintiff T&T Management, Inc. ("T&T") entered into a license agreement with Country Inn & Suites by Carlson, Inc. ("Country") to open and operate, with geographic exclusivity protections, a Country Inn & Suites Hotel in Port Orange, Florida. *Id.* at *1. Country was acquired twice, first by Radisson and then by Choice. *Id.* When Choice granted Sunshine Fund Port Orange, LLC ("Sunshine") a license to open another hotel within Choice's portfolio near T&T's hotel, T&T brought a breach of contract action alleging interference with the geographic protections. *Id.* at *1–2. Because Choice did not breach any agreement, the Court granted the motion to dismiss and dismissed the action with prejudice. *Id.* at *7.

T&T originally filed this action in the Middle District of Florida against Choice Hotels, Inc.; Radisson Hotels International, Inc.; and Sunshine Fund Port Orange, LLC. *Id.* at *3. T&T amended its complaint to name Country Inn & Suites by Radisson, Inc. in lieu of Radisson Hotel International, Inc. *Id.* The Middle District of Florida Court dismissed T&T's first amended complaint sua sponte as a "shotgun" pleading and required it to refile and "clearly delineate which factual allegations are relevant to each claim." *Id.* T&T filed its second amended complaint in response. *Id.* Defendants filed a motion to dismiss and

a motion to transfer the action to the District of Minnesota pursuant to the license agreement's forum selection clause. *Id.* The Middle District of Florida Court granted the motion to transfer, and the action was transferred to the District of Minnesota. *Id.*

Defendants then filed a second motion to dismiss. *Id.* T&T filed a third amended complaint to recalculate damages after it sold its hotel. *Id.* The Court granted Defendants' second motion to dismiss and dismissed the entire action with prejudice. *Id.* at *7. Judgment was entered in favor of Defendants. (J., Feb. 28, 2025, Docket No. 137.) Then, the Franchisor Defendants filed a motion for attorney's fees and costs. (Defs.' Mot. Att'y Fees, Mar. 14, 2025, Docket No. 138.) T&T acknowledges that the Franchisor Defendants are the prevailing parties and are entitled to reasonable attorney's fees but T&T disputes the reasonableness of the fee request on several grounds. (Pl.'s Opp'n Defs.' Mot. Att'y Fees at 4–5, Apr. 7, 2025, Docket No. 150.) T&T also requests an evidentiary hearing and a stay of any fee award pending appeal. (*Id.* at 5, 11–12.)

## DISCUSSION

### I.  STANDARD OF REVIEW

A prevailing party seeking an award of attorney's fees must provide evidence to support the reasonableness of the fees, both as to the hourly rate claimed and the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Id.* at 434; *see also Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023). A district court has substantial

discretion when determining the reasonableness of attorney's fees. *Hensley*, 461 U.S. at 437; *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000).

In the Eighth Circuit, "courts typically use the 'lodestar' method for calculating a reasonable award." *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018). To calculate the lodestar, courts multiply "the number of hours reasonably expended by the reasonable hourly rate." *Beckler*, 83 F.4th at 695 (citation omitted). The party seeking attorney's fees has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

## II.    ANALYSIS

The Franchisor Defendants seek $212,776.02 in attorney's fees and costs. T&T argues that the Franchisor Defendants' fee request includes unreasonable billable rates, excessive hours, work that could have been performed by lower billing individuals, duplicative work, and work for Defendant Sunshine, who is precluded from recovering attorney's fees and costs as it was not a party to the license agreement. T&T does not contest the request for costs in the amount of $4,362.23.

### A.    Reasonableness of Hourly Rates

The Court must first determine whether the hourly rates charged by the Franchisor Defendants' counsel were reasonable. The attorneys' hourly rates ranged from $250 to $695 depending on skill and experience. (Decl. of Craig P. Miller Decl. ("Miller Decl.") ¶

10, Mar. 14, 2025, Docket No. 141.) T&T argues that the hourly rates do not align with the market rates in Minneapolis and should be reduced to $275.50 for all billed hours.

In determining whether hourly rates are reasonable, the Eighth Circuit instructs courts to ensure that the requested rates are in line with those prevailing in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Courts give considerable attention to counsel's individual characteristics. *Id.* at 1459. Specifically, "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (citation omitted).

Minnesota courts have recently deemed fees up to $650 per hour in a breach of contract case to be reasonable. *Silver Bow Tr. U/T/A v. Verde Mobility, Inc.*, No. 24-4271, 2025 WL 1300481, at *6 (D. Minn. May 6, 2025) (citing *In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 827, 847 (D. Minn. 2019) (finding fees up to $650 reasonable)). *Cf. Krekelberg v. City of Minneapolis*, No. 13-3562, 2023 WL 4828382, at *5 (D. Minn. July 27, 2023) (determining that rates up to $675 were reasonable for civil litigators in this area). While the Franchisor Defendants did not support their hourly rates with anything apart from Miller's declaration, the Court may rely on its "experience and knowledge of prevailing market rates" to determine the reasonableness of claimed hourly rates. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Here, the attorneys billing at the highest rates had thirty to thirty-five years of legal experience. (Miller Decl. ¶¶ 16, 19a.) And Craig P. Miller, who billed the majority of the hours, is an expert in franchise and distribution litigation. (*Id.* ¶ 16.) Plus, only 0.6 hours were billed at the maximum of $695 and 29.9 hours were billed at $652. (*Id.* ¶ 10.) The remainder of the hours were billed below $600. (*Id.*) Because the hourly rates align with the Minneapolis market, a reduction of hourly rates is not warranted in this case.

**B.    Reasonableness of Hours Expended**

The Court must next determine whether the hours expended were also reasonable. In considering whether hours were "reasonably expended," courts should "weigh the hours claimed against their own knowledge, experience, and expertise of the time required to complete similar activities." *Harter*, 894 F.3d at 889 (citation omitted). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) (cleaned up)).

T&T challenges the reasonableness of the 425.9 hours claimed under four categories: (1) excessive hours, (2) excessive work by more senior attorneys, (3) duplicative work, and (4) work for Defendant Sunshine. The Court will address each individually.

**1.    Excessive Hours**

T&T's argument that the Franchisor Defendants expended excessive hours relies on the relative simplicity of the case and the procedural posture. In examining attorney's

fees, courts consider several factors including "the time and labor required" and "the novelty and difficulty of the questions." *Hensley*, 461 U.S. at 430 n.3. Here, the Franchisor Defendants request over $200,000 in attorney's fees for primarily a breach of contract dispute that ended at the motion to dismiss stage. But the litigation was complicated somewhat by business acquisitions, a motion to transfer, and several amended complaints. While the primary legal claim, breach of contract, has limited complexity, the facts and unique procedural posture suggest more hours were necessary than would be required in a standard breach of contract case. Furthermore, the litigation was extended because T&T filed an insufficient "shotgun" complaint in the Middle District of Florida despite a forum selection clause in the license agreement. As a result, the Court will not reduce the fee request based on excessive hours expended on this litigation.

### 2. Excessive Work by More Senior Attorneys

T&T also argues that attorneys with higher billable rates completed work that could have been done by other people at lower hourly rates. Specifically, T&T takes issue with Craig P. Miller, a partner at Lathrop GPM, performing 55% of the work billed, and Jackson R. Hobbs, an associate at Lathrop GPM, performing 33% of the work billed. T&T contends that Lathrop GPM had other attorneys with lower billing rates that could have done this work.

Here, the Court again takes note of the complexity of the litigation. *Hensley*, 461 U.S. at 430 n.3. The litigation's unique procedural posture and factual background required counsel to work additional hours, but the legal complexity remained relatively

simple. The Franchisor Defendants have not adequately explained why this breach of contract case required over half the work to be done by a partner with almost thirty years of experience. Accordingly, the Court will reduce the overall fee award by fifteen percent to account for work that was billed by Miller that could have been performed by another person at a lower billing rate. But the Court will not reduce the overall award to account for Hobbs's work because Hobbs's rates of $385 and $418 per hour, (Miller Decl. ¶ 10.), are substantially lower than Miller's, and fall more in line with what T&T argues would have been appropriate.

### 3. Duplicative Work

T&T alleges that filing a new motion to dismiss in the District of Minnesota after the case was transferred from the Middle District of Florida resulted in $9,024.90[1] in duplicative fees. T&T correctly notes that the substance of second the motion to dismiss is largely the same as the first motion, but the billing details show that much of the work on the second motion to dismiss was to ensure it conformed to Minnesota's local rules. (Miller Decl. ¶ 9, Ex. 2 at 7–8.) Further, the two motions to dismiss indicate factual developments that required revisions. (*Compare* 1st Mot. to Dismiss at 2, Nov. 6, 2023, Docket No. 48, *with* Mem. Supp. 2nd Mot. to Dismiss at 2, June 6, 2024, Docket No. 84.) Because the billing details and motions themselves indicate the changes and why they

---

[1] T&T at one point indicates that this figure should be $9,092.80, but because T&T indicated the value as $9,024.90 in its exhibits, the Court will assume $9,024.90 is correct. (Decl. of Mark S. Demorest ¶ 2, Ex. 1, Apr. 7, 2025, Docket No. 151.)

CASE 0:24-cv-01504-JRT-DTS     Doc. 155     Filed 08/04/25     Page 9 of 12

were necessary, the Court will not exclude the $9,024.90 in fees related to filing the second motion to dismiss.

### 4. Work for Defendant Sunshine

T&T urges the Court to reduce any fees for work provided to all three Defendants by 33.33% to account for work performed on behalf of Defendant Sunshine as it was not a party to the license agreement that provided for the recovery of attorney's fees and costs. T&T does not specifically identify which fees were for work that benefitted all three Defendants as opposed to just the Franchisor Defendants. The Franchisor Defendants excluded any fees for services billed only to Sunshine and were transparent that some services were performed for all Defendants and thus benefitted Sunshine. But the Franchisor Defendants also indicate that those services would have been performed even if Sunshine was never a defendant.

It is not the role of the Court to perform "auditing perfection" by "scrutinize[ing] each billing entry" but rather to achieve "rough justice." *Fox*, 563 U.S. at 838. The Franchisor Defendants excluded fees for work done only for Sunshine, and T&T identifies no other specific fees that require reduction. So, the Court declines to parse through the billing details with a fine-tooth comb to decide which fees should be reduced by one-third merely because Sunshine also benefited from that work that would have been performed regardless.

*   *   *

In sum, the Court will reduce the overall fee request by fifteen percent to account for the Franchisor Defendants' failure to explain why over half the hours required work by an attorney with thirty years of experience. Accordingly, the Court will award $177,151.65 in attorney's fees.

**C.     Evidentiary Hearing and Stay**

T&T requests an evidentiary hearing to assist the Court in resolving the fee disputes and asks that any fee award be stayed pending the outcome of T&T's appeal. The Court will deny both requests.

There is no dispute that some award of attorney's fees is proper under the license agreement, so the Court must only determine the reasonableness of any award. In determining the reasonableness of any fee award, the Court has broad discretion, *Hensley*, 461 U.S. at 437, and need not aim for auditing perfection, *Fox*, 563 U.S. at 838. Furthermore, "a request for attorney's fees should not result in a second major litigation." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 609 (2001) (quoting *Hensley*, 461 U.S. at 437). Accordingly, the Court will deny T&T's request for an evidentiary hearing on the issue of attorney's fees.

The Court will also deny T&T's request for a stay. Among other things, a party must show irreparable harm to warrant a stay pending appeal. *Ark. Peace Ctr. v. Ark. Dep't of Pollution Control*, 992 F.2d 145, 147 (8th Cir. 1993). Irreparable harm is harm without an adequate remedy at law. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Because any harm to T&T could be remedied through monetary damages, a

stay is inappropriate, and the Court will deny T&T's request to stay any award of attorney's fees and costs.

## CONCLUSION

After successfully receiving a dismissal with prejudice of T&T's claims, the Franchisor Defendants seek $208,413.70 in attorney's fees and $4,362.23 in costs as permitted under the license agreement. The Court finds the attorney's fee request largely reasonable but will apply a fifteen percent reduction because the complexity of the case did not require the majority of the work to be completed by a senior partner. Because the amount of requested costs is undisputed, the Court will award the full $4,362.23 in costs. Accordingly, the Court will grant the Franchisor Defendants' motion in part and award $177,151.65 in attorney's fees and $4,362.23 in costs.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Attorney Fees [Docket No. 138] is **GRANTED in part** as follows:

1. Defendants Choice Hotels International, Inc. and Country Inn & Suites by Radisson, Inc. shall recover from Plaintiff T&T Management, Inc. attorney's fees in the amount of $177,151.65.

2. Defendants Choice Hotels International, Inc. and Country Inn & Suites by Radisson, Inc. shall recover from Plaintiff T&T Management, Inc. costs in the amount of $4,362.23.

-12-

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 4, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge